**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION AT CHATTANOOGA**

| | |
|---|---|
| **RONALD LANDERS,** individually and on behalf of all others similarly situated,<br>4612 Malinta Lane<br>Chattanooga, TN 37416<br><br>                Plaintiffs,<br><br>    v.<br><br>**LOANCARE, LLC**<br>c/o CT Corporation System, Registered Agent<br>300 Montvue Road<br>Knoxville, TN 37919-5546<br><br>                Defendant. | Case No.<br><br>Judge<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ronald Landers, individually, and on behalf of all others similarly situated, by and through counsel, brings this action against Defendant LoanCare, LLC, and state as follows for his Class Action Complaint:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Ronald Landers ("Plaintiff" or "Landers") is a natural person who resides at and is the owner of real property located at 4612 Malinta Lane, Chattanooga, TN (the "Residence").

2.     Defendant LoanCare, LLC ("Defendant") is a foreign limited liability company organized under the laws of the State of Virginia and registered to do business in the State of Tennessee.  Defendant's headquarters is located in Virginia Beach, VA.

3.     Defendant is the servicer of the Promissory Note and Deed of Trust (collectively "the Loan") secured by Plaintiff's Residence on behalf of Lakeview Loan Servicing, LLC.

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), as Plaintiff and Defendant have diversity of citizenship, Plaintiff brings this case as a class action, the proposed Class consists of at least one hundred (100) members, and the matter in controversy exceeds the sum or value of five million dollars ($5,000,000), exclusive of interest and costs.

5. This Court has alternatively has jurisdiction pursuant to 28 U.S.C. 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection ("DFA"), the Real Estate Settlement Procedures Act, 12 U.S.C. 2601, *et seq.* ("RESPA").

6. This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. §1367.

7. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the Eastern District of Tennessee.

## SUMMARY OF CLAIMS

8. This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau ("CFPB") and implemented pursuant to section 6(f) of RESPA which became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41 of Regulation X as well as 12 C.F.R. 1026.1, *et seq.* a.k.a Regulation Z.

9. In January 2013 the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

10. Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) and TILA Regulation Z Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) and 78 F.R. 10901 (Regulation Z) which became effective on January 10th, 2014.

11.    The Loan on the Residence is a "federally related mortgage loan" as defined by 12 C.F.R. 1024.2(b).

12.    LoanCare is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers" as such term is defined by 12 C.F.R. 1026.41(e)(4), nor the exemption for a "qualified lender" as such term is defined by 12 C.F.R. 617.700.

13.    Landers asserts, in part, claims for relief against LoanCare for breaches of the specific rules under Regulation X as set forth, *infra.*

14.    Plaintiff has a private right of action pursuant to 15 U.S.C. 1640(a)(2)(C) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

15.    Landers also asserts claims individually and on behalf of all other individuals similarly situated in the putative class for Breach of Contract and Unjust Enrichment.

## FACTUAL BACKGROUND

16.    LoanCare is a mortgage servicing company and services Plaintiff's Loan, as well as the loans for which each member of the putative Class (defined below) is obligated—meaning that the Plaintiff and Class Members remit their monthly mortgage payments to LoanCare which is responsible for collecting and applying these payments on behalf of the owners of such loans in accordance with the terms of the loan documents and applicable law.

17.    Upon information and belief, LoanCare earns revenue from mortgage loan servicing in several ways, including, but not limited to:

    a.    A per-loan servicing fee established by its servicing agreements with the owner(s) or investor(s) that are entitled to payment of the principal and interest payments set forth in the mortgage loan instruments;

3

b. "Float" income on unapplied funds, which accrues for the time between when consumers pay and when funds are remitted to the loans' owners; and,

c. Retention of all or part of certain fees it collects from borrowers, such as late charges.

18. As part of its servicing duties for all loans relevant to this Complaint, Defendant collects and remits fees relative to the Escrow Account established pursuant to the Deed of Trust.

19. Each Deed of Trust contains a substantially similar, if not identical, provision providing that Escrow Items shall include:

> 3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items *which can attain priority over this Security Instrument as a lien or encumbrance on the Property*; (b) Leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, to be paid by Lender to the Secretary or the monthly charge by the Secretary Instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items."

*See*, **Exhibit 1** at p. 4 (emphasis added).

20. Plaintiff and all putative class members live in municipalities within the State of Tennessee that charge Water Quality Fees.

21. These Water Quality Fees have been found to be a user Fee and not a tax. *See*, *inter alia*, http://www.chattanooga.gov/public-works/city-engineering-a-water-quality-program/water-quality-program/44-public-works/709-wq-fee-q-a (last accessed September 14, 2020).

22. The Office of the Attorney General of the State of Tennessee has issued a written opinion stating that Water Quality Fees "[are] not a tax on real property" and that municipalities

cannot place a lien on a property for failure to pay the Water Quality Fee. *See* 1993 Tenn. AG LEXIS 57 93-57.

23.     Despite these edicts by various governmental entities in the State of Tennessee LoanCare has been systematically paying these Water Quality Fees as a portion of the escrow amounts for the Loan and the loans of each putative Class member, imposing the these feesas an escrow requirement, and improperly inflating the amount of money that Plaintiff and Class members' must place in their escrow account for years, collecting interest on the excess funds and converting funds that should be in the hands of borrowers whose loans are serviced by LoanCare.

## FACTS RELATIVE TO PLAINTIFF

24.     LoanCare is the servicer of Plaintiff's Loan and has been servicing Plaintiff's Loan since at least May 3, 2017.

25.     Plaintiff, through Counsel, exercised his rights under RESPA to send a Request for Information pursuant to 12 C.F.R. § 1024.36 to LoanCare.

26.     Plaintiff sent such Request for Information to LoanCare at the address LoanCare designated for notices of errors and requests for information pursuant to 12 C.F.R. §§ 1024.35(c) and 1024.36(b), respectively (the "Designated Address") and LoanCare received the same at the Designated Address.

27.     On or about November 5, 2019 LoanCare timely responded to the Request for Information, a copy of which is attached as **Exhibit 2**.

28.     Upon reviewing Exhibit 2 Landers was upset to confirm that in December 2017 LoanCare had unilaterally and in violation of his loan agreement remitted $126.49 to the City of Chattanooga for the Water Quality Fee for his Residence.

5

29.     Prior to December 2017 Landers had either paid this fee directly or had qualified for the United Way of Greater Chattanooga to pay this fee on his behalf as part of the City of Chattanooga Tax Freeze Program.

30.     In reviewing Exhibit 2, Landers also confirmed that the Escrow Analysis conducted as of April 2018 included this fee as a "City/Town Tax" which caused his escrow payment to increase to $222.36 monthly. *See* Exhibit 2 at p. 42.

31.     On March 19, 2020, Landers, through Counsel, sent a Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(11) to LoanCare asserting that LoanCare committed the following errors related to the payment of the Water Quality Fee:

    a.      Paying the fee in violation of Paragraph 3 of the Deed of Trust; and,

    b.      Creating improper escrow fees and improper escrow cushions for the contractual mortgage payments due since May 1, 2019.

*See* **Exhibit 3** at pp. 1-4.

32.     Landers sent Exhibit 3 to LoanCare at the Designated Address and LoanCare received the same at the Designated Address.

33.     On May 8, 2020 Landers, through Counsel, received correspondence dated May 1, 2020 in response to the Notice of Error which is attached as **Exhibit 4**.

34.     Through Exhibit 4, LoanCare admitted it paid the Water Quality Fee for the Residence as alleged through the Notice of Error and that it included such amounts in the escrow analyses for the Loan, but claimed that such payments were not in error. *See* Exhibit 4 at pp. 1-2.

35.     LoanCare did not perform a reasonable investigation into the errors alleged through the Notice of Error as Landers, through the Notice of Error, provided authority from the City of Chattanooga and the Office of the Attorney General of the State of Tennessee expressly stating

that Water Quality Fees could not result in a lien or encumbrance on the Residence and therefore could not constitute "Escrowed Items" per the terms of the Loan.

36.     Any reasonable investigation into the errors alleged through the Notice of Error would have included a plain reading of the terms of the Loan and of the authority provided through the Notice of Error and any reasonable interpretation of the same would confirm the existence of the alleged errors.

37.     Landers has suffered immediate harm by LoanCare's actions as the fee is not an "Escrowed Item" per Exhibit 1.  By paying this fee since LoanCare has caused damages to Landers including but not limited to:

    a.  Amortizing incorrect escrow balances since April 2018 which caused improper escrow deficiencies, escrow surpluses and improperly calculated escrow cushions;

    b.  Amortizing incorrect escrow balances since April 2018 which has caused LoanCare to misapply all tendered contractual payments since at least April 2018, if not earlier, resulting in the imposition of improper late fees, corporate advances, and misapplication of the contractual payments to the principal, interest and escrow balances owed on the Loan;

    c.  Improper rejection and misapplication of contractual mortgage payments in the amount of $5,700.00 which has triggered improper credit reporting on Landers' credit.

## CLASS ACTION ALLEGATIONS

**A.      The Class Definition**

38.      **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals (the "Class"), defined as follows:

> All individuals in the United States (1) for whom LoanCare services a residential mortgage loan secured by residential property located in the State of Tennessee, (2) whose mortgage contains Uniform Paragraph 3 of the Fannie/Freddie Uniform Mortgage, (3) whose residence securing the residential mortgage loan is located within a municipality in Tennessee where a Water Quality Fee is assessed, and (4) for whom LoanCare paid aWater Quality Fee as an escrow item.

> Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

**B.      Numerosity and Ascertainability**

39.      Upon information and belief, the Class comprises more than forty (40) members, such that the Class is so numerous that joinder of all members is impractical. Class members are identifiable through Defendant's records and payment databases.

40.      The definition of the Class is unambiguous, and Plaintiff is a member of the Class he seeks to represent.

41.      Nevertheless, Plaintiff reserves the right to amend or modify the Class definitions, for example, to create greater specificity, divide into additional subclasses, or limit particular issues as the case progresses.

42.     The Class is so numerous and geographically dispersed that joining all the Class members would be impracticable.

43.     Plaintiff and the Class satisfy the requirements of Rule 23(b)(1)(A), (b)(1), and/or (b)(3).

**C.     Commonality and Predominance**

44.     Plaintiff's claims are typical of the Class because Plaintiff's claims have the same essential characteristics as all other Class members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiff and all other members of the Class. All claims are based on the same course of conduct and similar legal theories. All Class members, including Plaintiff, suffer the same types of injuries and possess the same interests in pursuing this case as do Plaintiff. A single resolution of these claims would be preferable to a multiplicity of similar actions.

45.     There are common questions of law and fact subject to answers common to all Class Members that predominate over any questions only affecting individual members, including but not limited to:

      a.     Does the Plaintiff and/or class member live in a municipality in Tennessee with a Water Quality Fee?

      b.     Does the Plaintiff/class member have a Deed of Trust drafted using the Uniform Fannie Mae/Freddie Mac Instrument?

      c.     What is LoanCare's common policy and procedure with respect to payment of the Water Quality Fee as an escrow item?

      d.     Did LoanCare pay the Plaintiff/class member's Water Quality Fee as an escrow item?

e.     Did LoanCare perform a subsequent escrow analysis after the Water Quality Fee was paid which created the Water Quality Fee as an escrowed item?

**D.     Typicality**

46.     The claims of the Plaintiff are typical of the claims of the Class because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making it appropriate for the Court to render final relief regarding the Class as a whole. For example:

a.     Plaintiff own a property in Tennessee with a Water Quality Fee owed to the municipality;

b.     Plaintiff's Loan was serviced by LoanCare;

c.     Plaintiff's Deed of Trust utilizes the Uniform Fannie Mae/Freddie Mac Instrument;

d.     LoanCare improperly paid the Water Quality Fee;

e.     LoanCare improperly escrowed a Water Quality Fee as an escrow item in contradiction to Paragraph 3 of the Deed of Trust;

f.     As such, Plaintiff is a member of the Class.

47.     Defendant's actions and inactions described *supra* violated Plaintiff's and the Class members' statutory and common law rights.

48.     Plaintiff and each member of the Class has suffered damages as a result of Defendant's actions and inactions described *supra*.

49.     LoanCare's actions with respect to Plaintiff and Class members are substantially similar, including (1) LoanCare's servicing of the Loans is subject to the Uniform Fannie Mae/Freddie Mac Deed of Trust; (2) LoanCare paid a Water Quality Fee; (3) LoanCare performed at least one (1), if not multiple, escrow analysis which included aWater Quality Fee as an escrow

10

item; and (4) LoanCare demanded and collected payments from Plaintiff and Class Members which included a Water Quality Fee as an escrow item.

50.     A class action is superior to other available methods for resolving adjudication of the Class members' claims fairly and efficiently because:

   a.    It will avoid a multiplicity of suits and consequent burden on the courts and Defendant;

   b.    It would be virtually impossible for all members of the Class to intervene as parties-plaintiffs in this action;

   c.    It would assure uniform application of the laws and a single, uniform decision across the board without sacrificing procedural fairness or bringing about other undesirable results;

   d.    It will provide court oversight of the claims process, once Defendant's liability is adjudicated;

   e.    It would permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender; and,

   f.    It will permit the adjudication of relatively small claims by certain Class members, who could not afford to individually litigate such claims against a large corporate Defendant.

**E.      Adequacy of Representation**

51.     Plaintiff will fairly and adequately protect the interests of the class.

52.     Plaintiff comes before this Court as victims of Defendant. Plaintiff is a mortgagor of a Loan serviced by LoanCare which utilized the Uniform Fannie Mae/Freddie Mac Instrument. Plaintiff's Loan is secured by real estate located in a municipality in Tennessee with a Water

11

Quality Fee. LoanCare improperly paid Plaintiff's Water Quality Fee. LoanCare improperly imposed the Water Quality Fee as an "Escrowed Item" in contradiction to Paragraph 3 of the Deed of Trust.

53.     Plaintiff's Counsel will fairly and adequately prosecute the case on behalf of Plaintiff and the Class.

54.     Plaintiff's counsel are experienced trial attorneys who have engaged in extensive trial practice and have considerable experience in all aspects of class and mass tort litigation from several other class action and mass tort cases, including class action and mass tort cases against lenders and loan servicers.

55.     Plaintiff's counsel has the necessary skills, expertise, and competency to adequately represent Plaintiffs' interests and those of the class.

**COUNT 1**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(On behalf of Plaintiff and the Class)**

56.     Plaintiff repeats and realleges paragraphs 1 through 55 with the same force and effect as though fully set forth herein.

57.     Plaintiff's and each of the Class member's loans are each a valid contract between Plaintiff and each Class member and the owner or investor of their respective loans.

58.     LoanCare, as servicer on behalf of each of the owner or investor of Plaintiff's and Class members' loans, has knowledge of the loan contracts.

59.     LoanCare, unilaterally paid the Water Quality Fee for Plaintiff's and Class members' loans without the Plaintiff or Class members so requesting.

60.     Based on Paragraph 3 of each Plaintiff's and Class members' Deeds of Trust, the Water Quality Fee is not an escrowed item.  *See also*, *inter alia*, 1993 Tenn. AG LEXIS 57 93-57.

61.     LoanCare calculated and imposed the Water Quality Fee as an escrowed item, without Plaintiff or any Class member so requesting.

62.     By improperly paying the Water Quality Fee and performing the escrow analysis, LoanCare increased the amounts of the monthly contractual payments without justification which created an improper contractual payment for each Loan allowing LoanCare to profit from investing the escrow funds and created situations where the Water Quality Fee(s) are being double paid. The actions of LoanCare have caused the Plaintiff and Class members to suffer from harm including the damages described in Paragraph 62, *supra*.

63.     As a result of LoanCare's actions, LoanCare is liable to the Plaintiff and Class members for actual damages and punitive damages in an amount to be determined.

<u>**COUNT II**</u>
**BREACH OF CONTRACT**
**(On behalf of Plaintiff and the Class)**

64.     Plaintiff repeats and realleges Paragraphs 1 through 55 with the same force and effect as though fully set forth herein.

65.     Plaintiff and each Class member entered into a contract that Defendant services on behalf of the owner/investor of the Loan. The terms of such contracts are set forth in the Security Instruments underlying the mortgage, typically referred to as a mortgage, deed of trust, or security deed (collectively, except where inappropriate, the "Form Contract"). The Form Contract is a standard form document containing identical provisions as required by GSE and HUD.

66.     A reasonable interpretation of the Form Contract required the Defendant, as the servicer for the owner of the Loan, to pay escrowed items only as allowed under Paragraph 3 of the Deed of Trust.

67. Based on the allegations above, *supra*, These Water Quality Fees have been found to be a user Fee and not a tax. *See*, *inter alia*, http://www.chattanooga.gov/public-works/city-engineering-a-water-quality-program/water-quality-program/44-public-works/709-wq-fee-q-a (last accessed September 14, 2020).

68. In addition, the Office of the Attorney General of the State of Tennessee has issued a written opinion stating that Water Quality Fees "[are] not a tax on real property" and that municipalities cannot place a lien on a property for failure to pay a Water Quality Fee. *See* 1993 Tenn. AG LEXIS 57 93-57.

69. Based on the allegations, *supra*, and Exhibits 1 through 4, LoanCare improperly paid Water Quality Fees in contradiction of Paragraph 3 of the Deed of Trust.

70. In addition to improperly paying the Water Quality Fees, LoanCare, in contradiction of Paragraph 3 of the Deed of Trust, improperly performed at least one (1), if not multiple, escrow analysis imposing the Water Quality Fee as an escrowed item which improperly caused the Plaintiff's and Class Members' contractual mortgage payments to increase.

71. Based on the allegations, *supra*, and Exhibits 1 through 4, Plaintiff's payments increased improperly by at least $124.00 annually in 2019 and 2020.

72. As a result of LoanCare's actions described, *supra*, LoanCare has breached the Form Contract. This breach is one of bad faith as the Water Quality Fee is anot an "Escrowed Item" as a matter of Tennessee Law and, when provided with substantive law disputing the legality of the charges, LoanCare refused to correct its errors.

73. Plaintiff and Class members were injured by Defendant's breach of the Form Contract and suffered damages including, but not limited to, tendering improperly calculated contractual mortgage payments.

74.     LoanCare has breached the Contract and is liable to Plaintiff and Class Members for actual damages in an amount to be determined at trial.

## COUNT THREE:
**VIOLATIONS OF 12 C.F.R. § 1024.35(e), 12 U.S.C. §§ 2605(k)(1)(C), AND 2605(k)(1)(E)**
**(Failure to perform a reasonable investigation into the errors asserted by NOE #1)**
**(On behalf of Plaintiff and Class)**

75.     The Plaintiff restates and incorporates all of his statements and allegations contained in paragraphs 1 through 55, in their entirety, as if fully rewritten herein.

76.     12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

77.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

78.     12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

    (A)    Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

    (B)    Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

79. "A servicer of a federally related mortgage shall not … fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."12 U.S.C. § 2605(k)(1)(C).

80. Standard servicer duties are those "typically undertaken by servicers in the ordinary course of business." 78 FR 10696, 10739.

81. "A servicer of a federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

82. On March 19, 2020 Landers, through Counsel, sent a Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(11) to LoanCare asserting that LoanCare committed the following errors related to the payment of the Water Quality Fee:

    a.    Paying the fee in violation of Paragraph 3 of the Deed of Trust; and,

    b.    Creating improper escrow fees and improper escrow cushions for the contractual mortgage payments due since May 1, 2019.

*See* **Exhibit 3** at pp. 1-4

83. Exhibit 3 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a) because it contains Landers's name, loan number, property address, and states the errors Landers believed to have occurred.

84. Exhibit 3 was sent to the LoanCare at the Designated Address.

85. On May 8, 2020 Landers, through Counsel, received correspondence dated May 1, 2020 which is attached as **Exhibit 4**.

86.     Through Exhibit 4 LoanCare admitted it paid the Water Quality Fee for the Residence as alleged through the Notice of Error and that it included such amounts in the escrow analyses for the Loan, but claimed that such was not in error. *See* Exhibit 4 at pp. 1-2.

87.     Based on the responses by LoanCare described in Paragraphs 85 and 86, LoanCare failed to correct or perform a reasonable investigation into the errors asserted by and through Exhibit 3, as demonstrated by its conflicting, vague, and non-responsive statements that no error had occurred despite the litany of information provided in Exhibit 3.

88.     LoanCare's actions caused Landers to suffer actual damages, as discussed, *supra*, at ¶ 34.

89.     LoanCare's failures to correct or properly investigate the errors alleged in Exhibit 3 constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E).

90.     LoanCare's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Landers's rights.

91.     As a result of LoanCare's actions, LoanCare is liable to Landers for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

92.     Additionally, Landers requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

<u>**COUNT IV**</u>
**DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201(a) and 28 U.S.C. § 2202**
**(On behalf of Plaintiff and the Class)**

93.     Plaintiff repeats and realleges Paragraphs 1 through 55 with the same force and effect as though fully set forth herein.

94.     Plaintiff and each Class member entered into a contract that Defendant services on behalf of the owner/investor of the Loan. The terms of such contracts are set forth in the Security

Instruments underlying the mortgage, typically referred to as a mortgage, deed of trust, or security deed (collectively, except where inappropriate, the "Form Contract"). The Form Contract is a standard form document containing identical provisions as required by GSE and HUD.

95.     A reasonable interpretation of the Form Contract required the Defendant, as the servicer for the owner of the Loan, pay escrowed items only as allowed under Paragraph 3 of the Deed of Trust.

96.     Based on the allegations above, *supra*, These Water Quality Fees have been found to be a user Fee and not a tax. *See*, *inter alia*, http://www.chattanooga.gov/public-works/city-engineering-a-water-quality-program/water-quality-program/44-public-works/709-wq-fee-q-a (last accessed September 14, 2020).

97.     In addition, the Office of the Attorney General of the State of Tennessee has issued a written opinion stating that Water Quality Fees "[are] not a tax on real property" and that municipalities cannot place a lien on a property for failure to pay a Water Quality Fee. *See* 1993 Tenn. AG LEXIS 57 93-57.

98.     Based on the allegations, *supra*, and Exhibits 1 through 4, LoanCare improperly paid Water Quality Fees in contradiction of Paragraph 3 of the Deed of Trust.

99.     As a result of the facts described in the foregoing paragraphs, an actual controversy of sufficient immediately exists between the Plaintiff and Class Members and Loan Care as to whether the Water Quality Fee is an escrow item under Paragraph 3 of the Mortgage.

100.     As a result of the facts described in the foregoing paragraphs the Plaintiff and Class Members are entitled to a declaration from this Court that the Water Quality Fee is not an escrowed item under Paragraph 3 of the Mortgage.

## COUNT V
## INJUNCTIVE RELIEF
### (On behalf of Plaintiff and the Class)

101.    Plaintiff repeats and realleges Paragraphs 1 through 55 with the same force and effect as though fully set forth herein.

102.    LoanCare's ongoing and continuing wrongful conduct, including its payment of the Water Quality Fee, improper reamortization of escrow based on payment of the Water Quality Fee, and misapplication of contractual mortgage payments has caused and will continue to cause the Plaintiff and Class Members to suffer irreperable harm.

103.    Plaintiff and Class Members are suffering irreperable harm because every contractual payment each of them make after LoanCare pays the Water Quality Fee is being misapplied and causing each of them to be subject to improper fees and advances, improper escrow amounts being sought, and improper balances owed on the principal, interest, and escrow balances of the Loan.

104.    Such irreparable harm will not cease unless enjoined by the Court.

105.    Plaintiff and the Class are entitled to injunctive relief and other affirmative equitable relief requiring Defendant to cease payment of the Water Quality Fee on each Loan, immediately perform an escrow analysis without the Water Quality Fee calculated into the Loan Payment, and ceasing any improper application of the contractual mortgage payments remitted.

106.    If the requested injunction is not issued the Plaintiff and the Class will suffer and continue to suffer the irreparable injuries as set forth above.

107.    The hardships to the Plaintiff and the Class if the injunction was not to be issued would be significant.  LoanCare continues to pay the Water Quality Fee to the financial detriment to the Plaintiff and the Class.

108.   The requested injunctive relief is in the public interest, as it will provide assurances and security to the Plaintiff and Class Members who are already being actively financially harmed by the actions of LoanCare.

**PRAYER FOR RELIEF**

Plaintiff Ronald Landers respectfully requests that the Court enter an order against Defendant LoanCare, LLC as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class and/or Subclass as defined herein;

B.   Designating Plaintiff as representatives of the Class and their undersigned counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiff and the Class against Defendant as to Count One;

D.   Entering judgment in favor of Plaintiff and the Class against Defendant as to Count Two;

E.   Entering judgment in favor of Plaintiff and the Class against Defendant as to Count Three;

F.   Declaring that the Water Quality Fee is a non-escrowed item under Paragraph 3 of the Deed of Trust as to Count Four;

G.   Awarding Plaintiff and the Class their actual damages as allowed under Counts One, Two, and Three;

H.   Awarding Plaintiff and the Class their punitive damages as allowed under Count Two;

I.      Awarding Plaintiff and the Class their statutory damages as allowed under Count Three;

J.      Awarding Plaintiff and the Class their reasonable attorneys' fees and costs, including interest thereon, as allowed or required by law as to each Count, as applicable,

K.      Entering an injunction against LoanCare as set forth above in Count Five, and,

L.      Granting all such further and other relief as this Court deems just and appropriate.

Respectfully Submitted,

*/s/Brian D. Flick, Esq.*
Brian D Flick (OH #0081605)
Marc E. Dann, Esq. (OH #0039425)
*Pro Hac Vice Motion Anticipated*
DANN LAW
P.O. Box 6031040
Cleveland, OH  44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Lead Counsel/Counsel for Ronald Landers*

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

*/s/Brian D. Flick, Esq.*
Brian D Flick (OH #0081605)
Dann Law

*Lead Counsel/Counsel for Ronald Landers*